UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| | : |
| v. | :  CR: 19-0019 (RDM) |
| | : |
| **CHRISTOPHER GREEN,** | : |
| | : |
| **Defendant.** | : |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of the defendant being detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) (governing a crime of violence) and 18 U.S.C. § 3142(f)(1)(B) (governing an offense with a maximum penalty of life in custody or death). The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination concerning pre-trial detention.

**FACTUAL BACKGROUND**

On April 9, 2017, at approximately 8:58 p.m., Zaan Scott began walking home in the area of the 1300 block of Southern Avenue, S.E., Washington, D.C. During that time period, the defendant, Christopher Green, also known as "Twin," approached Mr. Scott on the sidewalk of the street, pulled out a handgun, and attempted to rob Mr. Scott. Thereafter, a fight ensued between them and at some point, Mr. Scott knocked the firearm out of Defendant Green's hand. The firearm fell to the ground, and Defendant Green and Mr. Scott eventually ended up on the ground in the area of 1310 Southern Avenue, S.E. During that same time period, a co-conspirator ran up

1

to Defendant Green and Mr. Scott while they were fighting on the sidewalk. That co-conspirator then shot Mr. Scott in the back, grabbed Defendant Green's firearm that was located on the sidewalk, and ran off.[1] Defendant Green went through Mr. Scott's pockets while he was still down on the pavement yelling for help, and he eventually followed behind his co-conspirator into a nearby cut, or pathway, leading to Prince George's County, Maryland. While in the cut, the co-conspirator also hid both firearms, but later came back and got them with Defendant Green.

Members of the Washington, D.C. Metropolitan Police Department (MPD) and emergency responders from Prince George's County and Washington, D.C. arrived on scene at approximately 9:09 p.m. They had been flagged down by a civilian who saw Mr. Scott lying on the street. Upon arrival, officers were able to briefly speak with Mr. Scott, who indicated that he was shot when someone tried to rob him. Ultimately, Mr. Scott was transported for further treatment to MedStar Washington Hospital Center. At MedStar, Mr. Scott was diagnosed with a gunshot wound to his right flank/center back. The projectile, which fragmented, was lodged between Mr. Scott's left kidney and a major artery, near lumbar #6. As a result of the shooting, Mr. Scott was paralyzed from the waist down.

On May 17, 2017, a little over a month after the shooting, Mr. Scott was being interviewed by the Washington Post for an article about the effects of violent crime in the District of Columbia. During the interview in Greenbelt, Maryland, Mr. Scott began complaining that he could not breathe and lost consciousness. The Prince George's County Fire Department responded to the scene and transported Mr. Scott to Doctor's Hospital, where Mr. Scott was pronounced dead at 4:13 p.m.

---

[1] This brazen attack on Mr. Scott occurred on the street in a public area. In fact, it occurred close to a bus stop, across the street from a hospital, and down the street from some stores.

On May 18, 2017, the Maryland Medical Examiner's Office conducted an autopsy. The Maryland Medical Examiner's Office conducted an autopsy, and Mr. Scott's death was ruled a homicide. The cause of death was determined to be occlusive pulmonary thromboembolus in a setting of paraplegia (i.e., a blood clot) due to the gunshot wound to Mr. Scott's back that was sustained on April 7, 2019.

On January 24, 2019, a Grand Jury returned an Indictment charging Defendant Green with Violent Crime (Murder) in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1) [Count One of the Indictment], First Degree Felony Murder While Armed, in violation of D.C. Code §§ 22-2101 and 4502 [Count Two of the Indictment], and Attempt to Commit Robbery While Armed, in violation of D.C. Code §§ 22-801, 2802, and 4502 [Count Three of the Indictment]. The elements of each of these offenses are as follows:

### A. Murder in Aid of Racketeering 18 U.S.C. § 1959(a)(1) – Count One:

To establish a murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1), the government must establish the following elements:

(1) The existence of an enterprise as defined in § 1959(b)(2);

(2) The charged enterprise engaged in, or its activities affected, interstate or foreign commerce;

(3) The charged enterprise engaged in "racketeering activity" as defined in § 1959(b)(1) and § 1961(1);

(4) The defendant knowingly and willfully committed one of the following crimes: (a) murder, . . . which offense was a violation of the laws of any state or the United States; and

(5) The underlying crime of violence was committed either (a) as consideration for the receipt of, or consideration for a promise or agreement to pay, anything of pecuniary value from the charged enterprise; or (b) for the purpose of gaining entrance to or maintaining or increasing position in the charged enterprise.

### B. First-Degree (Felony) Murder While Armed – Count Two:

To establish first-degree (felony) murder while armed in violation of 22 D.C. Code, Section 2101, 4502 the government must establish the following elements:

(1) The defendant caused the death of the decedent;

(2) The defendant did so while committing or attempting to commit robbery;

(3) At the time of the offense, the defendant was armed with a weapon, that being a firearm.

### C. Attempt to Commit Robbery While Armed – Count Three:

To establish attempt to commit robbery while armed in violation of 22 D.C. Code, Sections 2801, 2802, and 4502 the government must establish the following elements:

(1) The defendant committed an act which was reasonably designed to commit the crime of robbery;

(2) The defendant intended to commit a robbery;

(3) The defendant did more than prepare to commit the crime. His act(s) must have come dangerously close to committing the crime of robbery;

(4) At the time of the offense, the defendant was armed with a weapon, that being a firearm.

### ARGUMENT AND APPLICABLE AUTHORITY

On January 24, 2019, a Grand Jury returned the Indictment against Defendant Christopher Green. At the initial appearance on January 29, 2019, the government orally moved for the defendant's detention pending trial pursuant to the federal bail statute, 18 U.S.C. § 3142. The Court set a detention hearing for Friday, February 1, 2019. For purposes of that hearing, the government must establish by clear and convincing evidence that the defendant is a danger to the community and presents a risk of flight. *See United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988); *United States v. Johnson*, 212 F.Supp.3d 126, 128 (D.D.C. 2016). Moreover, at a detention hearing in an indicted case such as this one, the government may proceed by proffer of

4

evidence to support the defendant's detention. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Among other things, the four factors outlined under 18 U.S.C. § 3142(g) – that is, (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release – all support the conclusion that there is no condition or combination of conditions of release that would assure the safety of the community if the defendant was released from custody and that would assure the defendant's appearance for Court given that he presents a risk of flight if released from custody.

### **Nature and Circumstances of the Offenses Charged**

In this instance, on April 9, 2017, Defendant Green and a co-conspirator, aiding and abetting each other in the commission of the crimes, attempted to rob Zaan Scott with a firearm, which resulted in the shooting of Mr. Scott thereby causing an injuries from which Mr. Scott died on May 17, 2017. During this incident, both Defendant Green and his co-conspirator possessed and used firearms, and this attempted robbery and the subsequent shooting resulted in another person's death on the street in a public area of the District of Columbia. The brazen and callous nature of this attack and ultimate murder of another person in a public setting clearly demonstrates that Defendant Green is a significant danger to the community and that he should remain in custody pending the disposition of this case. *See U.S. v. Torres*, No. 11-CR-151, 2014 WL 6885915, at *4-5 (W.D.N.Y. Dec. 8, 2014) (holding that the defendant's release from detention would pose a "substantial and extreme danger" to the community, and the defendant is a flight risk, where the defendant was charged with murder in aid of racketeering, discharging a firearm in furtherance of

5

a crime of violence, conspiracy to distribute heroin or marijuana, and possessing firearms in furtherance of a drug trafficking crime, because he is "specifically alleged to have participated in [a] murder [], as well as a heroin and marijuana drug trafficking conspiracy [,] two firearm offenses," robbery, assault, and violent gang rivalries – even though he [the defendant] has a lack of criminal history and showed productive behavior while incarcerated); *see also United States v. Watson*, 475 Fed.Appx. 598, 601 (6th Cir. 2012) (finding as a factor favoring detention the court's conclusion that the defendant was connected to the fatal shooting of a third party in a prior case).

As an additional factor supporting detention, the government's evidence establishes that the defendant's participation in Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1), involved his participation in an "enterprise"[2] which engaged in "racketeering activity."[3] As reflected in the Indictment and as already found by a Grand Jury, between January 2017 and December 2017, the criminal organization, or enterprise, of which Defendant Green was a "core member" engaged in acts of murder, robbery, kidnapping, distribution of controlled substances, and obstruction of justice in the District of Columbia and Maryland.[4] Members of the enterprise also regularly carried firearms and engaged in violent conduct, such as robberies, to,

---

[2] An "enterprise" includes an association-in-fact that does not have a hierarchical structure; however, the association-in-fact enterprise must have a structure and must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 945 (2009); *see also United States v. White*, 116 F.3d 903, 924 (D.C. Cir.) (although the existence of an enterprise is a separate element, the existence of an enterprise may be proved through evidence of racketeering) (internal citations omitted), *cert. denied*, 522 U.S. 960 (1997).

[3] Under 18 U.S.C. 1959(b)(1) and 1961(1), racketeering activity is defined as, among other things, any act or threat involving murder, kidnaping, or robbery, which is chargeable under State law and punishable by imprisonment for more than one year; acts indictable under Section 1512 (relating to tampering with a witness, victim, or an informant); and offenses involving buying, selling, or otherwise dealing in a controlled substance (to include violations of Title 21, United States Code, Sections 841 and 846).

[4] In particular, the government's evidence includes, but is not limited to, Defendant Green engaging in cocaine and phencyclidine (PCP) trafficking as a member of the criminal enterprise between January 2017 and April 2017.

among other things, enrich its members and associates financially.  These conclusions, as already determined by a Grand Jury, clearly support the defendant's detention because he is a danger to the community.

### **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also weighs in favor of the defendant's detention.  The evidence against Defendant Green is particularly convincing and trustworthy for several reasons.   First, the decedent, Zaan Scott, was interviewed after he was shot on April 9, 2017, and during subsequent aspects of the investigation before his untimely death on May 17, 2017.  During that April 2017 to May 2017 time period, Mr. Scott advised law enforcement, emergency responding personnel, or one or more civilians that two individuals tried to rob him, that he fought one of his assailants who had a firearm, and that one of his assailants eventually shot him in the back with a firearm.[5]

Moreover, the overall conclusion that Defendant Green and a co-conspirator tried to rob and eventually shot Mr. Scott is supported by one of the defendant's own statements taken during the investigation.  For example, on June 27, 2017, two MPD Homicide Detectives interviewed Defendant Green while he was at a detention facility in Prince George's County, Maryland. During that approximately one-hour interview which was recorded on audiotape, the defendant, in substance, admitted that he got into a fight with the victim, whom Green said accused him of trying to rob the victim.  Defendant Green also said that a person he ultimately identified by the nickname of "E" and "Miller" eventually shot the victim during the time period that Defendant

---

[5] During law enforcement's investigation, Zaan Scott was unable to identify anyone who attacked him. Moreover, law enforcement was unable to identify any civilian witness who was at the crime scene, other than the cooperating witness identified herein, who could identify Defendant Green and his co-conspirator as the assailants.

7

Green got into a fight with him.

Finally, this conclusion that Defendant Green aided and abetted another person in the robbery, shooting, and ultimate murder of Zaan Scott is also supported by one of the government's cooperating witnesses. At a minimum, this cooperating individual has participated in debriefing sessions with law enforcement, signed an agreement to plead guilty to Conspiracy to Participate in a Racketeer Influenced and Corrupt Organization (Count One), in violation of 18 U.S.C. § 1962(d), and Violent Crime (Murder) in Aid of Racketeering (Count Two), in violation of 18 U.S.C. § 1959(a)(1), and agreed to cooperate with law enforcement in the investigation and prosecution of others so that he or she might receive a more lenient sentence for crimes committed. This cooperating witness advised law enforcement, among other things, that on April 9, 2017, in the 1400 block of Southern Avenue, S.E., Washington, D.C., he/she observed Defendant Green attempt to rob the victim/decedent with a firearm before the victim was shot by the co-conspirator with a different firearm.[6]

This evidence, coupled with cell site location data associated with Defendant Green's cellular telephone (240-280-4902) which was seized by MPD during its investigation and was later found from AT&T records to establish Defendant Green's presence in the vicinity of Mr. Scott's shooting on April 9, 2017, clearly supports the conclusion that Defendant Green participated in the attempted robbery and murder of Zaan Scott in April 2017 and that Defendant Green should remain in custody as a danger to the community.

---

[6] This witness has prior convictions in another jurisdiction from 2015 for controlled substances and property related offenses. In 2018, the witness also pled guilty in another jurisdiction to a violent crime related offense and a weapons offense.

### Defendant's History and Characteristics

The third factor, the history and characteristics of the defendant, similarly weighs in favor of the defendant's detention. In this regard, the defendant is no stranger to the criminal justice system. He has a February 2011 conviction for Possession of an Unregistered Firearm. This fact demonstrates that Defendant Green is not always a law abiding citizen and has an affinity for firearms possession. As such, given the violent nature of the charges in this instant case which involved Defendant Green's use of a firearm, this defendant cannot be trusted to refrain from engaging in violent conduct if released back into the community.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs heavily in favor of the defendant's detention. The charged offenses involve the defendant's use of a firearm during the commission of an attempted robbery. The charged offenses also involve a co-conspirator's act of shooting the victim while Defendant Green was trying to rob the victim, leading to the paralysis and ultimate death of the victim as a direct result of the defendant's commission of the charged offenses. Very significantly, the charged offenses – and the defendant's criminal conduct – also includes his participation in a criminal enterprise, or his involvement with a group of individuals, who engaged in, among other things, murder, robbery, and drug distribution for United States currency and other items of value. These factors demonstrate that Defendant Green is a danger to the community and that he should remain in custody.

Furthermore, we note that the defendant's presence in the community would present a significant threat or danger to the government's witnesses and, as such, jeopardize law

enforcement's ongoing criminal investigation. Consistent with 18 U.S.C. §§ 1959(a)(1) and 3591(a), Defendant Green is subject to a penalty of life in custody and potentially death if convicted. In that sense, he would have a tremendous incentive to try to intimidate, or even kill, potential witnesses if released from custody. *See United States v. Pirk*, 220 F.Supp.3d 402, 405 (W.D. New York 2016) (stating that offenders should be denied bail when there is a strong probability that a person will commit additional crimes if released). There is also a high probability that the defendant would inform others of their potential status as targets of the government's ongoing criminal investigation, and this information would also provide tremendous motive for others to intimidate or kill potential witnesses. Accordingly, the defendant should remain in custody as a danger to the community, including the government's witnesses.

### **Risk of Flight**

Finally, we note that the defendant presents a serious risk of flight if released from custody. He is subject to life in custody and potentially death if convicted. Therefore, the defendant will likely flee from prosecution and become a fugitive if released from custody.

## Conclusion

The Court should grant the government's motion to detain Defendant Green pending trial because he is a danger to the community and presents a risk of flight.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

BY:    */s/ K. F. Whitted & E. D'Angelo*
KENNETH F. WHITTED
Assistant United States Attorney
D.C. Bar No. 430346
(202) 252-7722 (office)
ELLEN D'ANGELO
Assistant United States Attorney
D.C. Bar No. 1035491
(202) 252-7569 (office)