### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **No. 1:19-cr-00019-RDM** |
| | **)** | |
| **CHRISTOPHER GREEN,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

Government's Motion *In Limine* To Admit Prior Testimony Of Nikki Mourtzinos Pursuant To
Federal Rule Of Evidence 804(a)(4) And (b)(1)

The United States of America, by and through the United States Attorney for the District

of Columbia, hereby moves the Court *in limine* to admit into evidence, at the upcoming retrial,

the testimony of Nikki Mourtzinos from the first trial, pursuant to subdivisions (a)(4) and (b)(1)

of rule 804 of the Federal Rule of Evidence.

Background

In 2019 defendant Christopher Green was charged in a Superseding Indictment with 13

counts involving violent crimes and firearms offense committed over a several month period in

2017.  Six of the counts, One, Four and Ten through Thirteen, relate to an incident that occurred

around 9 p.m. on April 9, 2017, in the 1300 block of Southern Avenue, S.E., Washington, D.C.

During that incident the defendant and another attempted to rob, and then shot, Zaan Scott,

causing a wound which led to Mr. Scott's death about five weeks later.

In Count One the defendant is charged with engaging in a racketeering conspiracy, during

the period January 1 to December 31, 2017, in violation of 18 U.S.C. § 1962(d).  As alleged in

this Count, the defendant and others conspired to participate in the conduct of the affairs of an

"enterprise" through a pattern of racketeering activity, which activity included committing

robbery and murder in violation of the D.C. Code.  Also, the Superseding Indictment specifically

alleges, for purposes of a Special Sentencing Factor for this Count, that the defendant and others, while armed with a firearm, and while attempting to commit robbery, shot Mr. Scott on April 9, 2017, resulting in Mr. Scott's death on May 17, 2017.

In Count Four of the Superseding Indictment the defendant is charged with murder in aid of racketeering, in connection with the death of Mr. Scott, in violation of 18 U.S.C. § 1959(a)(1). In Count Ten the defendant is charged with first degree (felony) murder, while armed, in connection with the death of Mr. Scott, in violation of D.C. Code §§ 22-2101 and 22-4502.  In Count Eleven the defendant is charged with possession of a firearm during the commission of a crime of violence (PFCV), specifically the murder of Mr. Scott, in violation of D.C. Code § 22-4504(a).  In Count Twelve the defendant is charged with attempting, while armed, to rob Mr. Scott, in violation of D.C. Code §§ 22-2801, 22-2802 and 22-4502.  And in Count Thirteen the defendant is charged with PFCV in connection with the attempted robbery of Mr. Scott, in violation of D.C. Code § 22-4504(a).

The initial trial in this case took place in 2021.  During the trial the government presented the testimony of Nikki Mourtzinos, M.D., who was the medical examiner who had performed the autopsy on Mr. Scott's body.  Dr. Mourtzinos, testifying in person,[1] opined that Mr. Scott's death was a homicide that had been caused at least in part by the gunshot wound he suffered on April 9, 2017.  Dr. Mourtzinos was cross-examined by counsel for defendant, with a focus on whether Mr. Scott had received inappropriate medical care after he was shot.

At the conclusion of the trial, the defendant was found guilty on multiple counts, including counts Ten and Twelve.  He was acquitted of the two corresponding PFCV counts, i.e.,

---

[1]Another witness for the government, Patricia Aronica, M.D., was permitted to testify remotely, without defense objection.  Dr. Aronica, also a medical examiner, performed the autopsy on Jan Cotto.  In Count 2 of the Superseding Indictment the defendant is charged with murder in aid of racketeering relating to the April 6, 2017 fatal shooting, in Maryland, of Ms. Cotto.

Eleven and Thirteen.  The jury failed to reach a verdict as to multiple counts, including Counts One and Four, as to which the Court declared a mistrial.  After the trial, on motion of the defendant, the Court dismissed several of the mistried counts; the Court also granted the government's motion to dismiss Count Four.

Retrial on the remaining mistried counts, which includes Count 1,[2] is scheduled to begin on July 23, 2024.  As the government has previously advised the Court, Dr. Mourtzinos who lives and works in the Cape Cod area of Massachusetts, is having a series of dental-surgery procedures beginning later this week and continuing into early August.  As a result she is unable to travel to D.C. during the likely evidence phase of the trial, which the government estimates will conclude no later than August 5, 2024.  Although Dr. Mourtzinos is available to testify remotely during this period, the defense objects to her not appearing in person.

Argument:  Dr. Mourtzinos is unavailable to appear in person in court, under Fed. R. Evid. 804(a)(4), and therefore her prior testimony is admissible under Fed. R. Evid. 804(b)(1).

Generally, under the Federal Rules of Evidence, hearsay, or a declarant's out-or-court statement offered for the truth of the matter asserted, is inadmissible at trial.  *See* Fed. R. Evid. 801(c), 802.  However, under certain circumstances, a declarant's prior testimony is admissible. First, the prior testimony must have been "given as a witness at a trial, hearing, or lawful deposition," and must now be "offered against a party who had . . .  an opportunity and similar motive to develop it by direct, cross-, or redirect examination.  *Id.* 804(b)(1).  Second, the declarant must be "considered to be unavailable as a witness."  *Id.* 804(b).

In the case of Dr. Mourtzinos, there is no serious questions that defendant Green, the only defendant at the first trial and at the upcoming retrial, had an opportunity to cross-examine Dr.

---

[2]The retrial will also involve counts Two (*see supra* note 1) and Count 6.  In Count 6, the defendant is charged with kidnapping in aid of racketeering, base on an incident that occurred in Maryland in the early morning hours of April 9, 2017.

Mourtzinos at the first trial.  Furthermore, the defendant's motive at the first trial to develop her testimony by cross-examination is essentially co-extensive with the motive to develop her testimony at the retrial, were she to appear and testify again.  Significantly, one of the charges at issue in the first trial, i.e., Count One of the Superseding Indictment, with its allegations that the defendant murdered Zaan Scott, whose death was the focus of Dr. Mourtizinos's testimony, remains at issue in the upcoming retrial.  *See Ausby v. United States*, 436 F. Supp. 3d 134, 149-50 (D.D.C. 2019) (finding "similar motive" by defendant to cross-examine unavailable witness and emphasizing that the defendant "faces the same charge on retrial as he did at the original trial").

Under subsection (a) of rule 804, there are several ways a declarant can be deemed unavailable.  In this case the government is relying on subdivision (a)(4), which provides that a declarant is unavailable as a witness if the declarant "cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness."  As the government has advised the Court, due to planned medical procedures necessary to treat an infirmity and physical illness, Dr. Mourtzinos cannot travel from her home in southern Massachusetts during the scheduled period of the retrial.

The fact that by late August Dr. Mourtzinos, will likely be well enough to travel to D.C. and to appear in person in court is only one factor to be considered.  As the Court of Appeals for the Third Circuit has held, the choice between adjourning a trial until an ill witness is available, or deeming the witness unavailable, admitting her prior testimony under Fed. R. Evid. 804, and proceeding with the trial as scheduled, "must be guided on the one hand by the policy of favoring live testimony and confrontation in the presence of the factfinder and, on the other, by the policy, manifested in the Speedy Trial Act, of prompt disposition of criminal trials."  *United States v.*

4

*Faison*, 670 F.2d 292, 297 (3ᵈ Cir. 1982) (citation omitted).  "Moreover, since witness availability affects [a trial] court's ability to manage its cases, the trial court's decision to refuse an adjournment and to admit prior testimony must be treated with respectful deference."  *Id.*

The *Faison* decision further instructs that:

> In exercising discretion a trial judge must consider all relevant circumstances, including:  the importance of the absent witness for the case; the nature and extent of cross-examination in the earlier testimony; the nature of the illness; the expected time of recovery; the reliability of the evidence of the probable duration of the illness; and any special circumstances counselling against delay.

*Id.*; *accord Ecker v. Scott*, 69 F.3d 69, 72 (5ᵗʰ Cir. 1995).  The government submits that on balance the *Faison* circumstances will favor admitting Dr. Mourtzinos's prior testimony and proceeding with the retrial as scheduled.  Although Dr. Mourtzinos is undoubtedly an important witness, the cross-examination at the first trial suggested the immediate reason for Mr. Scott's demise, on May 17, 2017, 38 days after being shot, was due to "deep vein thrombosis" (DVT), essentially a blood clot, which can originate in and be brought on by paraplegia of the legs, and then travel through the blood stream where it can block blood flow to a patient's lungs.  The cross-examination also suggested that DVT in a paraplegic patient can be prevented by physical therapy, essentially someone moving the patient's legs for him, and the use of blood-thinner medication.  In other words, although the gunshot wound to the back that Mr. Scott suffered on April 9, 2017 resulted in his legs being paralyzed, the thrust of the cross was that Mr. Scott's death could have been prevented with better medical treatment.  Accordingly, in the government's view, the extensive defense cross-examination at the first trial cuts in favor of admitting Dr. Mourtzinos's prior testimony.[3]

---

[3] For the convenience of the Court, a transcript of Dr. Mourtzinos's testimony at the first trial is attached as an Exhibit.

The government is currently endeavoring to get additional information about Dr. Mourtzinos's own medical condition and the expected time need for her to sufficiently recover to be able to travel to D.C.  However, the inability of a witness to travel, due to "post-surgical discomfort," has been upheld as establishing unavailability for purposes of rule 804.  *United States v. Bruce*, 1998 WL 165144, at *5 (6th Cir., Mar. 31, 1998).  Moreover, a period as short as one to two weeks for a witness to recover from an infirmity has been deemed sufficient to establish unavailability.  *See Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 712-13 (9th Cir. 1992).

Finally, the government believes there are special circumstances counselling against delaying the retrial in order for Dr. Mourtzinos to testify in person.  Specifically, it has been nearly three years since the end of the initial trial.  During that time Mr. Scott's loved ones have not been able to have the closure that would come with the sentencing of the men responsible for his murder, because of the unresolved charges in this case.[4]

<u>Conclusion</u>

Based on the foregoing, and for any additional reasons the government might offer at a hearing on this motion, the Court should order that Dr. Mourtzinos's testimony from the first trial is admissible in the retrial.  A proposed Order is attached.

---

[4]As was shown in the first trial, a second defendant has already pled guilty to charges relating to the role he played in causing Mr. Scott's death.  Because that defendant is a cooperating witness, and is expected to testify at the retrial, like defendant Green he has also yet to be sentenced.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

by:     /s/*Nihar R. Mohanty*                        /s/*Michael C. Liebman*
         Assistant United States Attorney         Assistant United States Attorney
         D.C. Bar no. 436686                           D.C. Bar no. 479562
         601 D St., N.W., room 5.216              601 D Street, N.W., room 4.1501
         Washington, D.C.  20530                   Washington, D.C.  20530
         (202) 2542-7700                               (202) 252-7243
         nihar.mohanty@usdoj.gov                michael.liebman@usdoj.gov